**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-02143 |
| LLOYD J. AUSTIN III, et al. | |
| Defendants. | |

<u>NOTICE OF ERRATA</u>

Plaintiff attaches a corrected complaint that lists the Parties' addresses pursuant to LCvR 5.1(c).

Dated: July 26, 2024

Respectfully submitted,

By: */s/ Jason M. Wilcox*
　　Jason M. Wilcox, P.C. (DC Bar No. 1011415)
　　KIRKLAND & ELLIS LLP
　　1301 Pennsylvania Avenue NW
　　Washington, D.C. 20004
　　(202) 389-5910
　　jason.wilcox@kirkland.com

　　Patrick J. O'Toole, Jr.*
　　Joseph P. Walter*
　　KIRKLAND & ELLIS LLP
　　200 Clarendon Street, 47th Floor
　　Boston, MA 02116
　　(617) 385-7500
　　patrick.otoole@kirkland.com
　　joe.walter@kirkland.com

　　*Pro hac vice applications pending*

Rochelle Bobroff (DC Bar No. 420892)
Abigail Reynolds (DC Bar No. 1735880)
NATIONAL VETERANS LEGAL SERVICES
PROGRAM
1100 Wilson Blvd., Suite 900
Arlington, Virginia 22209
(202) 621-5686
rochelle@nvlsp.org
abigail@nvlsp.org


ATTORNEYS FOR PLAINTIFF
JANE DOE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | |
| LLOYD J. AUSTIN III, in his official capacity as United States Secretary of Defense, 1000 Defense Pentagon Washington, D.C. 20301-1000 | |
| CHRISTINE WORMUTH, in her official capacity as United States Secretary of the Army, 101 Army Pentagon Washington, D.C. 20310-0101 | Civil Action No. 1:24-cv-02143 |
| and | |
| ARMY BOARD FOR CORRECTION OF MILITARY RECORDS, 251 18th Street South Suite 385 Arlington, VA 22202-3531 | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. § 702, and

the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202, Plaintiff Jane Doe ("Plaintiff") brings

this action for declaratory and injunctive relief against Lloyd Austin, in his official capacity as

United States Secretary of Defense, Christine Wormuth, in her official capacity as United States

Secretary of the Army, and the Army Board for Correction of Military Records (the "Board")

(collectively, the "Defendants") to challenge the findings of the Board in Docket No. AR20210009948.

2.      In September 2020, Plaintiff, a military veteran, applied to the Board for the third time to upgrade her characterization of service from "Under Other Than Honorable Conditions" to "Honorable" on the basis that her misconduct resulted from undiagnosed and untreated Post-Traumatic Stress Disorder ("PTSD") from military sexual trauma ("MST") ("Plaintiff's Request"). The Board noted there was "administrative irregularity" in the retention of Plaintiff's military records, such that any records of counseling, disciplinary action, and separation are missing. Even though the Army Review Board Agency medical advisor concluded, and the Board concurred, that "PTSD and MST would have negatively impact[ed] her work performance and ability to deal with authority figures," the Board nevertheless erroneously concluded that no mitigation was possible and denied Plaintiff's Request on February 9, 2022 (*see* Exhibit A attached, the "Board Denial"), based largely on the absence of these records. This suit seeks judicial review of the Board Denial.

3.      Board decisions regarding characterization of service upgrade requests are final agency actions and are "subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also* 5 U.S.C. § 706(2).

4.      The Board Denial is arbitrary and capricious because (i) it fails to apply the favorable consideration standard to the missing information in Plaintiff's military record, (ii) it neither engages with the evidence Plaintiff submitted nor applies the liberal consideration standard to Plaintiff's Request, and (iii) it does not apply the preponderance of the evidence standard to Plaintiff's Request.

5.      Accordingly, Plaintiff respectfully requests this Court (i) declare the Board Denial was arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law, (ii) vacate the Board Denial, and (iii) upgrade Plaintiff's discharge characterization to Honorable and reinstate her to the rank of Specialist (E-4) at the time of her discharge or, alternatively, remand this matter to the Board for further consideration of Plaintiff's request.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201–2202, and may hear this action pursuant to the APA, 5 U.S.C. § 701–06 because this case raises federal questions and seeks review of final agency action for which there is no other adequate remedy.

7.      The Court has authority to issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Rule 57 of the Federal Rules of Civil Procedure.

8.      The Court has authority to grant injunctive relief pursuant to 5 U.S.C. §§ 702, 706, and Rule 65 of the Federal Rules of Civil Procedure.

9.      The Board Denial, upon confirmation by the Secretary of the Army, became a final agency action for which there is no other adequate remedy. *See* 5 U.S.C. § 704; 10 U.S.C. § 1552(4) – (5).

10.      Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because multiple Defendants are headquartered in the District of Columbia and a substantial part of the events giving rise to the claim occurred in the District of Columbia. Venue is also proper under 5 U.S.C. § 703 because this Court is a court of competent jurisdiction.

11.      The Board Denial was issued on February 9, 2022. In accordance with 28 U.S.C.

§ 2401, this action is brought within six years of the Board Denial and the Army's final decision to deny Plaintiff relief.

## PARTIES

12.     Plaintiff Jane Doe, is a United States Army veteran. She is citizen of the United States, resides in Florissant, Missouri, and served in the Army from 1987 to 1992.

13.     Defendant Lloyd J. Austin III is sued in his capacity as the United States Secretary of Defense. In his role as the Secretary of Defense, he is the chief officer of the Department of the Defense and exercises authority, direction, and control over the Department and, resultingly, the Department of the Army and the Board. Upon information and belief, Defendant Austin performs a significant amount of his official duties within this judicial district, at 1000 Defense Pentagon, Washington, DC 20301-1000.

14.     Defendant Christine Wormuth is sued in her capacity as the United States Secretary of the Army. In her role as the Secretary of the Army, she is the chief officer of the Department of the Army and exercises authority, direction, and control over the Department of the Army and, resultingly, the Board. Upon information and belief, Defendant Wormuth performs a significant amount of her official duties within this judicial district, at 101 Army Pentagon, Washington, DC 20310-0101.

15.     Defendant Board is an administrative review board for the Department of the Army. Defendant Board's stated mission is to correct errors in or remove injustices from U.S. Army military records. Upon information and belief, Defendant Board is located at 251 18th Street South, Suite 385, Arlington VA 22202-3531.

## STATUTORY AND REGULATORY BACKGROUND

16.     Federal law provides a mechanism to amend military records where it is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This may include upgrading a veteran's characterization of service.

17.     Subject to certain exceptions not relevant here, "such corrections shall be made by the Secretary [of each military branch] acting through boards of civilians." *Id.*

18.     Pursuant to that statutory framework, the Army established the Board to consider and act upon correction requests of Army service members and veterans. *See* 32 C.F.R. § 581.3.

19.     The Board's jurisdiction extends to any military record of the Department of the Army. 32 C.F.R. § 581.3(d)(1). Applicants may file an application for a correction of records only after the applicant has exhausted all administrative remedies to correct the alleged error or injustice. 32 C.F.R. § 581.3(d)(3). Board reviews consist of at least a three-member panel, and decisions are made by a majority vote of the panel. 32 C.F.R. §§ 581.3(e)(3), (g)(1).

20.     The Board "begins its consideration of each case with the presumption of administrative regularity" and the applicant "has the burden of proving an error or injustice by a preponderance of the evidence." 32 C.F.R. § 581.3(e)(2).

21.     Decisions by the Board constitute final agency actions. *See* 10 U.S.C. § 1552(a)(4) – (5); 32 C.F.R. § 581.3(g)(2).

22.     Servicemembers may request the Board reconsider its decision if there is new evidence that was not previously in the record that sufficiently demonstrates a "material error or injustice." *See* 32 C.F.R. § 581.3(g)(4)(i).

23.     Absent new evidence, a servicemember's only available remedy, following a Board decision, is to "appeal to a court of appropriate jurisdiction." 32 C.F.R. § 581.3(g)(4)(ii).

24.     Additionally, the Army has a legal responsibility to maintain the Army Military Human Resource Record ("AMHRR") of "[s]oldiers, retirees, veterans, and deceased personnel" as an official government record. Army Regulation (AR) 600-8-104, ¶ 1-6; *see also* AR 600-8-104, Ch. 3.

25.     The AMHRR contains several types of documents deemed necessary to store by the Army, including the official military personnel file ("OMPF"). AR 600-8-104, ¶ 1-6.

26.     The OMPF is defined as "permanent documentation within the AMHRR that documents facts related to a soldier during the course of his or her entire Army career, from time of accession into the Army until final separation, discharge, or retirement." *Id.*

27.     The purpose of the OMPF is to preserve permanent documents pertaining to, among other things, disciplinary actions, separation, and "any other personnel actions." *Id.*

## I.     FACTUAL BACKGROUND

### A.     Plaintiff's Service in the U.S. Army

28.     Plaintiff enlisted in the U.S. Army Reserve on September 9, 1987. Upon completion of initial active duty training on January 29, 1988, she was awarded a Military Occupational Specialty ("MOS") of 88M (Motor Transport Operator).

29.     On October 12, 1988, while serving in the U.S. Army Reserve, Plaintiff enlisted in the regular component of the Army and began a period of active duty.

30.     Upon her enlistment, she was assigned to HHSB 2/9th Field Artillery Company (Pershing Missile) based in Germany.

31.     On September 20, 1990, she was promoted to the rank of Specialist (E-4).

32.     In December 1990, her unit deactivated and she was reassigned to the 32nd Transportation Company, which at the time had already deployed to Saudi Arabia.

33.     From December 12, 1990, to May 23, 1991, Plaintiff was deployed to Saudi Arabia in support of Operation Desert Storm and Operation Desert Shield.

34.     After returning from deployment, Plaintiff's unit was transferred to Fort Carson, Colorado, where she stayed for the remainder of her service in the Army.

35.     Plaintiff was a good soldier. During her service in the Army, she received numerous decorations including: the Army Achievement Medal (two awards), the Army Good Conduct Medal, the National Defense Service Medal, the Southwest Asia Service Medial w/3rd Bronze Service Star, the Army Service Ribbon, the Overseas Service Ribbon, and the Kuwait Liberation Medal.

36.     Plaintiff's military records reflect honorable service. Further, Plaintiff received numerous certificates of commendation, including: two Operation Desert Storm Certificates for (1) serving with distinction to achieve freedom from tyranny in support of Operation Desert Storm and (2) serving with distinction with the VII Corps, which was among the coalition forces fighting for the liberation of Kuwait, and two Certificates of Achievement for (1) distinguishing herself by meritorious service as a driver of an Army motor vehicle and (2) meritorious performance of duty while participating in massive humanitarian relief operations in Saudi Arabia.

**B.     Plaintiff's Sexual Assault and Subsequent Discharge from the Army**

37.     On December 26, 1990, shortly after she joined her new unit in Saudi Arabia, Plaintiff was sexually assaulted by a fellow service member. Plaintiff identified her assailant as Sergeant J. H.

38.     Because Sergeant J. H. served in the same unit as Plaintiff, she was forced to see him and work alongside him every day for the duration of her unit's deployment and thereafter.

39.     In an attempt to get away from Sergeant J. H., Plaintiff filed multiple requests to remain in Germany while her unit was being transferred to Fort Carson, Colorado. All of her requests were denied, and she was forced to move to Colorado with the same unit.

40.     At Fort Carson, Plaintiff was initially assigned to live in the same barracks as Sergeant J. H. She did everything she could to avoid him, including volunteering to be detailed out of her company to work in the mail room instead of performing the normal duties of her MOS.

41.     On March 6, 1992, Plaintiff re-enlisted in the Army for another four years with the understanding she would be able to transfer duty stations. These requests continued to be denied and she continued to have frequent interaction with Sergeant J. H.

42.     In November 1992, Plaintiff and another servicemember got into an argument in the barracks over money he owed her for reimbursement for a rental car.

43.     The recently promoted Staff Sergeant J. H. entered the barracks and intervened in the argument. Staff Sergeant J. H. and Plaintiff then began arguing, and Staff Sergeant J. H. ordered Plaintiff at ease. Plaintiff ignored him and exited the barracks.

44.     In December 1992, Staff Sergeant J. H. wrote up Plaintiff under Article 15 of the Uniform Code of Military Justice ("UCMJ") for disrespect of a non-commissioned officer.

45.     Except under limited circumstances, service members have the right to refuse non-judicial punishment ("NJP") under Article 15 and demand trial by court-martial. 10 U.S.C. § 815(a).

46.     Plaintiff refused NJP and consulted with a Judge Advocate General ("JAG") in advance of court-martial.

47.    On the advice of the JAG, Plaintiff accepted discharge in lieu of court-martial. Plaintiff accepted discharge in lieu of court-martial without fully understanding her rights or considering the consequences because she desperately wanted to distance herself from Staff Sergeant J. H. and avoid any further interactions with the man who had assaulted her.

48.    On December 21, 1992, orders were published which reduced her paygrade to Private (E-1) effective December 17, 1992, under the provisions of Army Regulation 600-200 (Enlisted Personnel Management).[1]

49.    Plaintiff was discharged from the Army on December 23, 1992. On her Certificate of Release or Discharge from Active Duty ("DD Form 214"), the reason for Plaintiff's discharge is listed as "For the Good of the Service – In Lieu of Court Martial," and Plaintiff's term of service is characterized as "Under Other Than Honorable Conditions."

**C.    Plaintiff's Post-Military Activities**

50.    Plaintiff has led a productive life since her discharge from the U.S. Army.

51.    Following her discharge from the Army, Plaintiff has held steady employment in a variety of positions, including as a mail carrier for the United States Postal Service and as a legal administrative specialist at the National Call Center.

52.    Plaintiff earned a bachelor's degree in financial technology from the University of Missouri – St. Louis in 2015 and is currently working towards a graduate degree in accounting.

53.    Plaintiff volunteered with an Internal Revenue Service outreach group providing free income tax services for two years before she was diagnosed with a rare inflammatory lung disorder which prevented her from being able to interact with large groups of people.

---

[1]    Citation refers to the Army Regulations in effect at the time of Plaintiff's service and discharge from the Army, in December 1992.

54.     Plaintiff has raised six children and has a close relationship with her family.

55.     Since 2015, Plaintiff has received consistent mental health treatment for Post-Traumatic Stress Disorder (PTSD) arising from being sexually assaulted during Operation Desert Storm. Plaintiff has made significant progress in managing her mental health symptoms.

**D.      Plaintiff's Mental Health Conditions and Applications for Service-Connected Disability Benefits**

56.     Following her discharge, Plaintiff continued to suffer from the effects of PTSD related to the military sexual trauma (MST) she experienced while serving in the Army.

57.     Plaintiff has received treatment in the Veterans Affairs ("VA") system since February 1999.

58.     In March 1996, the VA determined that Plaintiff's service is considered honorable for VA purposes, entitling her to VA benefits based on her service.

59.     Plaintiff applied to the VA for service-connected disability compensation in August 2003 and again in September 2009, claiming service connection for PTSD, depression and anxiety, but in both instances her applications were denied.

60.     In June 2015, Plaintiff submitted new and material evidence in support of her application for compensation for PTSD, which allowed the VA to reopen her claim. Regardless, the VA continued to deny service connection because the evidence did not show that PTSD was incurred in or aggravated by military service.

61.     Plaintiff immediately appealed this denial, and the VA ordered a Compensation and Pension ("C&P") exam. The VA examiner diagnosed Plaintiff with "Other Specified Trauma and Stress Related Disorder," but opined that this condition pre-existed her military service based on her report of traumatic stressors prior to service. Based on this finding, the VA issued a statement of the case in December 2017 affirming the denial of service connection.

62.     Plaintiff then appealed this denial to the Board of Veteran's Affairs ("BVA"). In April 2019, the BVA issued a decision granting service connection for an acquired psychiatric disorder, to include PTSD. The BVA determined that the presumption of soundness was not rebutted simply because Plaintiff had experienced traumatic events during her childhood and found that the evidence supported the conclusion that she met all the requirements for service connection for PTSD related to MST.

63.     Plaintiff was granted service connection for PTSD with a 50% disability rating in April 2019. Her disability rating was increased to 70% in February 2020, but then was reduced back to 50% in January 2021.

64.     In accordance with the guidance from the Hagel and Kurta Memos (defined *infra*) there is documentation to support a behavioral health diagnosis at the time of Plaintiff's discharge.

## II.     PRIOR PROCEEDINGS AND ISSUANCE OF DISCHARGE UPGRADE GUIDANCE

### A.     Guidance to Boards for the Correction of Military/Naval Records.

65.     The Secretary of Defense issued guidance on September 3, 2014, titled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder." *See* Memorandum from Chuck Hagel, Secretary of Defense, to Secretaries of the Military Departments (Sept. 3, 2014) (Exhibit B attached, the "Hagel Memo").

66.     The Hagel Memo instructs that "[l]iberal consideration will be given in petitions for changes in characterization of service to [s]ervice treatment record entries which document one or more symptoms which meet the diagnostic criteria of [PTSD] or related conditions." Ex. B Attach. at 1.

67.     The Hagel Memo instructs that "[s]pecial consideration will be given to
Department of Veterans Affairs (VA) determinations which document PTSD or PTSD-related
conditions connected to military service," and that, "[i]n cases in which PTSD or PTSD-related
conditions may be reasonably determined to have existed at the time of discharge, those
conditions will be considered potential mitigating factors in the misconduct that caused the other
than honorable conditions characterization of service." *Id.*

68.     The Hagel Memo further states that the Board "may obtain advisory opinions
from Department of Defense mental health care professionals or otherwise use Department of
Defense mental health care professionals or physicians in their consideration of cases to advise
them on assessing the presence of PTSD and its potentially mitigating effects relating to the
misconduct that formed the basis for the under other than honorable characterization of service."
*Id* at 2.

69.     The Acting Under Secretary of Defense for Personnel and Readiness issued
additional guidance on August 25, 2017, titled "Clarifying Guidance to Military Discharge
Review Boards and Boards for Correction of Military/Naval Records Considering Requests by
Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault,
or Sexual Harassment." *See* Memorandum from Anthony M. Kurta, Acting Under Secretary of
Defense for Personnel and Readiness, to Secretaries of the Military Departments (Aug. 25, 2017)
(Exhibit C attached, the "Kurta Memo").

70.     The Kurta Memo instructs that "[l]iberal consideration will be given to veterans
petitioning for discharge relief when the application for relief is based in whole or in part on
matters relating to mental health conditions, including PTSD; [traumatic brain injury ("TBI")];
sexual assault; or sexual harassment." Ex. C Attach. at 1.

71.     The Kurta Memo instructs that service members diagnosed with mental health conditions or who reported sexual assault receive heightened screening "to ensure the causal relationship of possible symptoms and discharge is fully considered, and characterization of service is appropriate." *Id.* at 4.

72.     The Kurta Memo instructs that evidence of sexual assault may include "[Department of Defense records], law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, physicians, pregnancy tests, tests for sexually transmitted diseases, and [personal] statements." *Id.* at 1.

73.     The Kurta Memo instructs that evidence of a mental health condition may include: "changes in behavior; …deterioration in work performance; inability of the individual to conform their behavior to the expectations of a military environment; substance abuse; [and] episodes of depression, panic attacks, or anxiety without an identifiable cause." *Id.*

74.     Further, "[a] veteran's testimony alone, oral or written, may establish the existence of a condition or experience…." *Id.* at 2.

75.     The Kurta Memo also instructs that "[e]vidence of misconduct, including any misconduct underlying a veteran's discharge, may be evidence of a mental health condition." *Id* at 1.

76.     The Kurta Memo requires the Board to consider whether "the [mental health] condition or experience excuses or mitigates the discharge," and states that conditions that existed at the time of discharge "will be liberally considered as excusing or mitigating the discharge." *Id.* at 2.

77.     The Kurta Memo instructs that liberal consideration be given to a diagnosis by a licensed psychiatrist or psychologist. *Id.* It also instructs that VA determinations be considered as

"persuasive evidence that the [mental health] condition existed or experience occurred during military service." *Id.*

78.    The Kurta Memo states that liberal consideration covers, among other things, the concept that PTSD and MST "inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." *Id.* at 4.

79.    The Kurta Memo further instructs that "[a]n Honorable discharge characterization does not require flawless military service. Many veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." *Id.*

80.    The liberal consideration standard was codified by Congress on December 12, 2017, with the addition of subsection (h) into 10 U.S.C. § 1552. 10 U.S.C. § 1552 (1956). Section 1552(a) permits the secretaries of the military departments to "correct any military record… when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (1956). Section 1552(h) applies to former servicemen and women whose claims for review are based in whole or in part "on matters relating to post-traumatic stress disorder or traumatic brain injury as supporting rationale" and whose "post-traumatic stress disorder or traumatic brain injury is related to combat or military sexual trauma…" 10 U.S.C. § 1552(h) (2017).

81.    Section 1552(h) explicitly requires that a claim for review of a case based on MST or PTSD must be reviewed with "liberal consideration to the claimant that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the claimant's discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B) (2017).

82.     The Under Secretary of Defense for Personnel and Readiness issued additional guidance on July 25, 2018, titled "Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations." *See* Memorandum from Robert L. Wilkie, Under Secretary of Defense for Personnel and Readiness, to Secretaries of the Military Departments (Jul. 25, 2018) (Exhibit D attached, the "Wilkie Memo").

83.     The Wilkie Memo centers around ideas of fairness and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which individuals have paid for their misdeeds." Ex. D Attach. at 1.

84.     The Wilkie Memo states that "[e]vidence in support of relief may come from sources other than a veteran's service record." *Id.* at 2.

85.     Further, "[a] veteran or Service member's sworn testimony alone, oral or written, may establish the existence of a fact supportive of relief." *Id.* at 2.

86.     The Wilkie Memo instructs that "[r]equests for relief based in whole or in part on a mental health condition, including post-traumatic stress disorder (PTSD); Traumatic Brain Injury (TBI); or a sexual assault or sexual harassment experience, should be considered for relief on equitable, injustice or clemency grounds whenever there is insufficient evidence to warrant relief for an error or impropriety." *Id.* at 2.

87.     The Wilkie Memo also instructs that "[e]vidence submitted by a government official with oversight or responsibility for the matter at issue and that acknowledges a relevant error or injustice was committed, provided that it is submitted in his or her official capacity, should be favorably considered as establishing a grounds for relief." *Id.* at 2.

88.     The Wilkie Memo includes a list of factors that the Board must consider, as applicable, when determining whether to grant relief on the basis of equity, injustice or clemency grounds, including, "[t]he aggravating and mitigating facts related to the record or punishment from which the veteran or Service member wants relief…[s]everity of misconduct…[l]ength of time since misconduct…[t]he degree to which the requested relief is necessary for the applicant…[c]haracter and reputation of applicant…[m]eritorious service in government or other endeavors…[a]vailability of other remedies…[w]hether misconduct may have been youthful indiscretion…[c]haracter references." *Id.* at 3.

89.     The Wilkie Memo is the final document in a series of interpretive memoranda providing clarification to the Board with respect to the review of discharge-upgrade applications filed by veterans with mental health conditions or who are survivors of sexual trauma. These memoranda apply to veterans who received less-than-honorable discharges as a result of misconduct, including "Under Other Than Honorable Conditions" discharges.

**B.     Plaintiff's Prior Applications for Characterization of Service Upgrade**

90.     Plaintiff has unsuccessfully applied three times to the Board requesting that her discharge be upgraded from "Under Other Than Honorable Conditions" to "Honorable."

91.     She was first denied an upgrade in June 2009.

92.     The Board acknowledged that Plaintiff's discharge packet was not available, but still presumed that the separation authority acted appropriately in issuing an Under Other Than Honorable Conditions discharge based on her overall record of service.

93.     Plaintiff provided a personal statement detailing the MST she experienced, but the Board did not consider this persuasive evidence that "her personal problems were the reason she committed the misconduct which led to her discharge." Army Board for Correction of Military

18

Records, Record of Proceedings, June 18, 2009, Docket No. AR2009003170 at 5 (*see* Exhibit E attached).

94.     Plaintiff was denied an upgrade for a second time in July 2019.

95.     In this decision, the Board again acknowledged that the records containing the reason leading to the court-martial charge were not available for review, but determined that her request for a discharge was the equivalent of admitting guilt to a criminal offense. The Board denied relief "[b]ased on her offense of a criminal nature, as well as her failure to accept responsibility and show remorse for the events leading to her separation." Army Board for Correction of Military Records, Record of Proceedings, July 15, 2019, Docket No. AR20180004550 at 2 (*see* Exhibit F attached).

     **C.**    **The 2022 Board Denial of Plaintiff's Request for Characterization of Service Upgrade**

96.     Plaintiff was denied an upgrade for a third and final time in February 2022.

97.     In September 2020, Plaintiff submitted her application to the Board to upgrade her characterization of service from "Under Other Than Honorable Conditions" to "Honorable" ("Plaintiff's Request").

98.     Board proceedings before a three-person panel regarding Plaintiff's case occurred on February 9, 2022.

99.     In support of Plaintiff's Request, Plaintiff provided the Board with numerous documents, including a statement detailing the circumstances leading to her discharge, evidence of positive post-discharge conduct in the form of a college transcript and three (3) character reference letters, a medical advisory opinion obtained by the Board which highlighted her PTSD diagnosis, and the VA's grant of service connection for PTSD and MST.

100.    The Army Review Board Agency ("ARBA") medical advisor reviewed Plaintiff's record and found that there was documentation to support a behavioral health diagnosis at the time of Plaintiff's discharge. The ARBA medical advisor declined to provide a medical advisory opinion regarding mitigation because there was no documentation to suggest Plaintiff did not meet retention standards at the time of her discharge and there was no information regarding the misconduct that resulted in her discharge. However, the ARBA medical advisor noted that "PTSD and MST would have negatively impact[ed] her work performance and ability to deal with authority figures." Ex. A Attach. at 6.

101.    The lack of documentation was the result of the Army's failure to properly retain Plaintiff's service record.

102.    On February 9, 2022, the Board voted 3 to 0 to deny the portion of Plaintiff's Request that pertained to upgrading her discharge to honorable, change to her separation authority, separation code, narrative reason, or reinstatement of her rank to Specialist (E-4).

103.    The Board admitted administrative irregularity in the Army's failure to properly retain Plaintiff's service records, such that any records of counseling, disciplinary action, and separation are missing.

104.    The Board determined that this administrative irregularity rendered it unable to determine the specific circumstances that occurred during Plaintiff's discharge process and refused to consider mitigation.

105.    The Board concurred with the ARBA medical advisory opinion, but denied any upgrade based on the Army's failure to maintain her records.

106.    The Board stated that Plaintiff "did not provide any supporting documentation and her service record has insufficient evidence to support her contentions." *Id.* at 7.

107.    Based on this refusal to consider mitigation, the Board failed to consider whether Plaintiff's post-discharge conduct, as documented by her college transcript and three character reference letters—which were acknowledged by the Board—merited an upgrade.

108.    The Board Denial fails to discuss Plaintiff's MST and how it resulted in her discharge.

109.    The Board Denial does not explain how the panel weighed the circumstances surrounding Plaintiff's discharge against her PTSD related to MST.

110.    The Board Denial, however, acknowledges that Plaintiff's PTSD related to MST would have negatively impacted her work performance and ability to deal with authority figures.

111.    The Board Denial fails to discuss whether it applied the relevant criteria outlined in the Wilkie Memo when determining whether to grant relief on the basis of equity, justice or clemency grounds.

112.    The Board Denial failed to consider the instruction from the Wilkie Memo that "[e]vidence submitted by a government official with oversight or responsibility for the matter at issue and that acknowledges a relevant error or injustice was committed, provided that it is submitted in his or her official capacity, should be favorably considered as establishing a grounds for relief." Ex. D Attach. at 2.

### III.    CLAIM FOR RELIEF

**A.    Violation of the APA, 5 U.S.C. § 706(2) – Agency Action Which Is Arbitrary and Capricious, Unsupported by Substantial Evidence and Otherwise Not In Accordance With Law**

113.    Plaintiff realleges and incorporates the allegations of all the preceding paragraphs.

114.    The APA provides that a reviewing court "shall … hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

115.    "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Under that standard, agency action is unlawful if the agency fails to articulate a rational connection between the facts found and the choice made, fails to consider an important aspect of the problem, or offers an explanation for its decision that runs counter to the evidence. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). If an agency fails to provide "a rational connection between the facts found and the choice made," the action is arbitrary and capricious and, therefore, unlawful. *Encino Motorcars*, 579 U.S. at 221 (citing 5 U.S.C. § 706(2)(A); *State Farm*, 463 U.S. at 43). The explanation must be such that the path between the facts and the agency decision "may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

116.    The Board Denial is unlawful when judged against that standard for three independent reasons.

117.    *First*, the Board Denial is arbitrary and capricious because it fails to consider the government's error in maintaining and preserving Plaintiff's military record in a favorable light.

118.    The Wilkie Memo states that "[e]vidence submitted by a government official with oversight or responsibility for the matter at issue and that acknowledges a relevant error or injustice was committed, provided that it is submitted in his or her official capacity, should be favorably considered as establishing a grounds for relief." Ex. D Attach. at 2.

119.    The Board acknowledged that "administrative irregularity" occurred regarding the maintenance of Plaintiff's military record, such that no evidence exists of any disciplinary action, counseling, or even the circumstances leading to her discharge.

120.    This statement made by the Board in an official proceeding constitutes evidence submitted by a responsible government official, submitted in their official capacity, that acknowledges a relevant error or injustice was committed: the failure to properly maintain Plaintiff's military record.

121.    The Board was required to follow the Wilkie Memo guidance directing that this evidence should be favorably considered as establishing grounds for relief, and the Board should have assessed all factors for an upgrade.

122.    The Board fails to give the evidence resulting from this administrative error (i.e., the lack of any documentary evidence of the specific facts of the misconduct) favorable consideration because it uses the lack of documentation—due entirely to the fault of the government—as an excuse for not performing the mitigation analysis required under Department Defense guidance.

123.    Under the favorable consideration standard from the Wilkie Memo, the Board must consider all the factors for mitigation of the discharge regardless of the lack of documents regarding the specific charges.

124.    The Board failed to follow Department of Defense guidance stating that "[a]n Honorable discharge characterization does not require flawless military service" and that many veterans receive an honorable discharge "despite some relatively minor or infrequent misconduct." Ex. C Attach. at 4.

125.    *Second*, the Board Denial is arbitrary and capricious because it neither engages with the evidence Plaintiff submitted nor properly applies the liberal consideration standard to Plaintiff's Request as required by 10 U.S.C. § 1552(h) and the Hagel and Kurta Memos described above.

126.    The Board was required to consider the mitigating effect of her PTSD and MST on her misconduct. The Kurta Memo states that "[t]he veteran's testimony alone, oral or written, may establish…that the condition or experience excuses or mitigates the discharge." *Id.* at 2. Additionally, "[e]vidence of misconduct, including any misconduct underlying a veteran's discharge, may be evidence of a mental health condition, including PTSD; TBI; or of behavior consistent with experiencing sexual assault or sexual harassment." *Id.* at 1.

127.    In the absence of any official record of Plaintiff's misconduct due to the Army's own error, the Board was required to liberally consider Plaintiff's account of the misconduct that led to her discharge. Instead, the Board erroneously concluded that Plaintiff "did not provide any supporting documentation and her service record has insufficient evidence to support her contentions." Ex. A Attach. at 7.

128.    The Board also improperly ignored the medical advisory opinion's conclusion that, "PTSD and MST would have negatively impact[ed] her work performance and ability to deal with authority figures." *Id.* at 6. Significantly, Plaintiff's misconduct consisted of a single allegation of disrespect to a superior non-commissioned officer – the same one who had previously sexually assaulted her. This sole allegation of disrespect towards her attacker is consistent with the medical advisory opinion's conclusion that Plaintiff's PTSD and MST could impact her work or ability to deal with authority figures.

129.    Additionally, the Board failed to address the Kurta Memo's teaching that PTSD from MST inherently affected Plaintiff's behavior, resulting in her behaving differently than expected, which was likely the reason she got into a disagreement with her superior non-commissioned officer who had previously sexually assaulted her, refused non-judicial

punishment, and accepted discharge in lieu of court martial to avoid further interaction with her attacker.

130.    *Third*, the Board Denial is arbitrary and capricious because it does not properly apply the preponderance of the evidence standard to Plaintiff's Request.

131.    In support of her application for a service characterization upgrade, Plaintiff submitted substantial evidence to the Board, including, her account of the circumstances leading to her discharge, evidence of post-discharge good conduct, and documentation of her PTSD and MST diagnoses. *See* Compl. ¶ 99.

132.    The Board concurred with the ARBA medical advisory opinion opining that Plaintiff's PTSD and MST would have negatively impacted her work performance and ability to deal with authority figures.

133.    The only evidence of any misconduct by Plaintiff during her military service is the block on her DD Form 214 listing her reason for separation as "For the Good of the Service – In Lieu of Court Martial." *See* Exhibit G attached.

134.    The preponderance of the evidence supports Plaintiff's contentions.

135.    Through no fault of her own, Plaintiff's military record is missing key information. The Board has acknowledged that this amounts to administrative irregularity. In the presence of acknowledged administrative irregularity, the Board may not rely upon the presumption of administrative regularity.

136.    The Board's failure to grant an upgrade based on Plaintiff's statement, the VA's award of service-connected disability compensation for PTSD from MST, and other favorable evidence improperly denied her relief as directed by the statute and Department of Defense guidance.

137.    As a result of the Board's failure to provide the aforementioned explanations, the Board Denial is arbitrary and capricious.

138.    The arbitrary and capricious Board Denial prejudiced Plaintiff, as it resulted in Plaintiff's Request being denied by the Board, her characterization of service not being upgraded, and her loss of rank and benefits related to an Honorable characterization of service.

139.    The Board's many failures in addressing Plaintiff's Request are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus violate the APA. 5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in her favor and against Defendants, and grant the following relief:

A.  Hold that the Board Denial was arbitrary and capricious, unsupported by substantial evidence, and contrary to law;

B.  Vacate the Board Denial;

C.  Upgrade Plaintiff's characterization of service to Honorable and reinstate her to the rank of Specialist (E-4) at the time of her discharge or, alternatively, remand this matter to the Board for further consideration of Plaintiff's Request;

D.  Grant Plaintiff reasonable attorney's fees and expenses pursuant to 28 U.S.C. § 2412; and

E.  Grant such further relief that this Court deems just and proper.

Dated: July 22, 2024                              Respectfully submitted,


By: /s/ Jason M. Wilcox
    Patrick J. O'Toole, Jr.
    Andrew Farrington
    Joseph P. Walter
    KIRKLAND & ELLIS LLP
    200 Clarendon Street, 47th Floor
    Boston, MA 02116
    (617) 385-7500
    patrick.otoole@kirkland.com
    andrew.farrington@kirkland.com
    joe.walter@kirkland.com

    Jason M. Wilcox, P.C. (DC Bar No. 1011415)
    KIRKLAND & ELLIS LLP
    1301 Pennsylvania Avenue NW
    Washington, D.C. 20004
    (202) 389-5910
    jason.wilcox@kirkland.com

    Aidan Burke
    KIRKLAND & ELLIS LLP
    Three Brickell City Center
    Miami, FL 33131
    (305) 432-5903
    aidan.burke@kirkland.com

    Rochelle Bobroff (DC Bar No. 420892)
    Abigail Reynolds (DC Bar No. 1735880)
    NATIONAL VETERANS LEGAL SERVICES
    PROGRAM
    1100 Wilson Blvd., Suite 900
    Arlington, Virginia 22209
    (202) 621-5686
    rochelle@nvlsp.org
    abigail@nvlsp.org


    ATTORNEYS FOR PLAINTIFF
    JANE DOE